**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EDWARD LESTER, # 13296-026,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-1383-MJR** |
| | ) | |
| **J.S. WALTON,** | ) | |
| **WILLIAM MAYS,** | ) | |
| **BRADLY WEESEL,**[1] | ) | |
| **RUNGY,** | ) | |
| **and UNKNOWN PARTIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

Plaintiff is an inmate in the United States Penitentiary in Marion, where he is serving a 360-month sentence for production of child pornography. *United States v. Lester*, Case No. 04-cr-10012-MMM (C.D. Ill.). He brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He claims that Defendants have violated his First Amendment rights by prohibiting him from receiving a publication. Plaintiff also seeks to have this suit certified as a class action. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

On or about May 21, 2015, an issue of Plaintiff's *Red Bulletin* magazine was rejected by prison officials because it contained a depiction of nudity. Defendants John/Jane Doe #5 and/or #6 (mailroom employees) searched the incoming publication and determined that

---

[1] Although Plaintiff spelled this party's surname as "Weesel," the surname was entered as "Wessel" on the Court's docket sheet. The Court shall use Plaintiff's spelling in this order.

it should not be delivered to Plaintiff (Doc. 1, pp. 10, 14-15).[2]  Defendant Rungy (head of the Publication Review Committee), along with committee members Defendants John/Jane Doe #2, #3, and #4, then reviewed the magazine and again rejected it.  Finally, Defendant Walton (Marion Warden) reviewed the material, and rejected the publication (Doc. 1, pp. 10, 14).

Plaintiff filed a grievance over the rejection of his magazine, but it was denied by Defendant Weesel (counselor), Defendant John/Jane Doe #1 (Administrative Remedy Coordinator), and Defendant Walton.  In the grievance, Plaintiff argued that the magazine does not regularly "feature" nudity, so the single issue containing nude content should not have been rejected (Doc. 1, pp. 15, 17).

Plaintiff argues that each of the Defendants ignored or acted outside of "clearly established case law, controlling program statements, and the C.F.R." when they rejected his publication and his grievances (Doc. 1, p. 11).  He specifically refers (Doc. 1, p. 10) to *Amatel v. Reno*, 156 F.3d 192 (D.C. Cir. 1998) (finding that under *Turner v. Safley*, 482 U.S. 78 (1987), the "Ensign Amendment" regulations under which a federal prison rejected inmates' *Playboy* and *Penthouse* magazines did not violate the First Amendment, and remanding case for factual inquiry into whether the regulations were unconstitutionally vague); and *Aiello v. Litscher*, 104 F. Supp. 2d 1068, 1070 (W.D. Wis. 2000) (denying summary judgment motion because of material factual disputes as to whether the regulation restricting nudity in prisoners' publications served legitimate penological interests and gave fair notice of what was prohibited).  Plaintiff contends that his magazine should have been allowed, as it falls within the exemption permitting nudity that is illustrative of medical, education, or anthropological contents of the publication.

---

[2] Plaintiff neglected to insert the name of the publication or the date of its rejection in the body of his complaint (Doc. 1, p. 10), and at one point claims the rejected magazine was an issue of *Wired* (Doc. 1, p. 11).  His attached exhibits, however, supply the missing date and clarify that the publication in question was the *Red Bulletin* (Doc. 1, pp. 14-15).

In addition to his First Amendment *Bivens* claim, Plaintiff asserts that the Defendants unlawfully conspired to commit a civil rights violation, as prohibited by 42 U.S.C. § 1985 (Doc. 1, pp. 11-12).

Plaintiff seeks compensatory and punitive damages (Doc. 1, p. 13).  Further, he has filed a motion for a temporary restraining order ("TRO") and/or preliminary injunction (Doc. 2), directing Defendants to follow the regulations at C.F.R 540 and Bureau of Prisons policy statement 5266.11.  Those provisions contain the exemptions for publications containing nudity illustrative of medical, educational, or anthropological content.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a preliminary threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible

that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:**  First Amendment claim against Defendants Walton, Rungy, and John/Jane Does #2, #3, #4, #5, and #6, for improperly rejecting an issue of Plaintiff's *Red Bulletin* magazine which contained a depiction of nudity that may have fallen within the exemption for medical, educational and/or anthropological content, or that should have been exempted because the magazine did not regularly feature nudity;

> **Count 2:**  First Amendment claim against Defendants Weesel and Jane/John Doe #1, for denying Plaintiff's grievances over the rejection of his publications by the Defendants as outlined in Count 1;

> **Count 3:**  Claim under 42 U.S.C. § 1985 against all Defendants for engaging in a conspiracy to violate Plaintiff's civil rights.

Count 1 shall proceed for further review.  Counts 2 and 3, however, fail to state a claim upon which relief may be granted, and shall be dismissed.

## Count 1 – First Amendment

The freedom of speech protected by the First Amendment is not merely freedom to speak; it is also freedom to read.  *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Lamont v. Postmaster General*,

381 U.S. 301, 306-07 (1965)).  While inmates do not lose their constitutional rights upon being confined in prison, some restrictions on those rights may be imposed by prison authorities.  In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.  *Turner* outlined four factors which courts must consider in evaluating whether a regulation restricting prisoners' rights is sufficiently reasonably related to legitimate penological interests to withstand constitutional scrutiny:  "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

The regulation under which Defendants refused to allow Plaintiff's magazine into the prison was adopted pursuant to the 1996 "Ensign Amendment," which prohibits the use of Bureau of Prisons ("BOP") funds to pay for the distribution of commercial material that "is sexually explicit or features nudity."  *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208 § 614.

As explained by the court in *Amatel v. Reno*, the BOP regulations

> [A]ssign rather narrow meanings to these terms: "nudity" means "a pictorial depiction where genitalia or female breasts are exposed"; "features" means that "the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual onetime issues." Even material that otherwise would be said to "feature nudity" is excepted if it contains "nudity illustrative of medical, educational, or anthropological content."

*Amatel v. Reno*, 156 F.3d 192, 194-95 (D.C. Cir. 1998) (quoting from 28 C.F.R. § 540.72(b)). Plaintiff argues that his magazine does not regularly "feature" nudity, and was wrongly rejected based on a single incident of nude content (Doc. 1, pp. 15, 17). He further asserts, without more explanation, that the exception for medical, educational, or anthropological content should apply.

Defendant Walton's letter rejecting the publication states: "The enclosed publication on page 24 contains sexually explicit information or material or features nudity; photograph of a female with nude  breasts with areolas and nipples also visible, and is being returned to [the sender] as explained above" (Doc. 1, p. 14). Preventing the introduction of a nude photograph into the prison environment appears to comport with a legitimate penological interest. However, further factual development is appropriate in order to determine whether such an interest, and the guidelines, were properly applied in rejecting Plaintiff's reading material.

Accordingly, **Count 1** shall proceed for further consideration against the Defendants who were directly involved in reviewing and rejecting Plaintiff's *Red Bulletin* magazine:  the mailroom personnel (Defendant John/Jane Does #5 and #6), Defendant Rungy and the other members of the Publication Review Committee (John/Jane Doe Defendants #2, #3, and #4), and Defendant Walton.  Of course, Plaintiff must identify the John/Jane Doe Defendants by name before notice of this action may be served upon them.

## Dismissal of Count 2 – Denial of Grievances

The only role played by Defendant Weesel and Jane/John Doe #1, according to the complaint, was that these individuals reviewed and denied Plaintiff's grievance(s) that he filed after his publication was rejected.  Neither of these Defendants was involved in the original decisions to reject the magazine; instead, they merely reviewed the actions of other officials, after the fact.  This does not constitute "personal involvement" in the denial of a constitutional

right, and thus will not support a civil rights claim against Defendant Weesel or Defendant Jane/John Doe #1.  *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  The alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

For these reasons, **Count 2** against Defendants Weesel and Jane/John Doe #1 shall be dismissed from the action without prejudice.

**Dismissal of Count 3 – Conspiracy**

Plaintiff also seeks to hold all of the Defendants liable for conspiracy to violate his civil rights under 42 U.S.C. § 1985.  However, he offers no factual basis to suggest that any of the Defendants conspired together with the aim of violating Plaintiff's First Amendment rights.  A mere conclusory allegation that a conspiracy was afoot is not sufficient to support a claim – instead, there must be some factual underpinning in order for the claim to pass muster under § 1915A.  *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).  "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him."  *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."  *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999)).

The fact that all the named Defendants were involved in enforcing the same rule,

alone, does not establish a conspiracy.  Because the complaint does not set forth any facts to suggest the existence of a conspiracy between any of the Defendants who rejected Plaintiff's magazines, Count 3 shall be dismissed without prejudice.

**Dismissal of Defendant Mays**

Plaintiff lists Defendant Mays among the parties, and describes him as a counselor who rejected Plaintiff's grievance/informal remedy (Doc. 1, pp. 2-3).  However, Plaintiff does not mention him again in the body of the complaint.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Plaintiff's brief description of Defendant Mays suggests that he was merely involved in the review of Plaintiff's grievances.  If so, he would be subject to dismissal from this action for the reasons discussed in Count 2 above.  In any event, Defendant Mays shall be dismissed without prejudice because Plaintiff did not describe any specific claim against him.

**Motion for TRO/Preliminary Injunction (Doc. 2)**

Insofar as this motion seeks a temporary restraining order (TRO), it is **DENIED IN PART**.  However, that portion of the motion which seeks a preliminary injunction is **REFERRED** to United States Magistrate Judge Williams for further consideration.

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days.  A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).  Without expressing any opinion on the ultimate merits of Plaintiff's claims for relief, the Court concludes that a TRO should not issue in this matter.  Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.  Again, Plaintiff's request for a preliminary injunction shall undergo further review.

## Motion for Class Certification (Doc. 4)

Plaintiff's Motion for Class Action and Certification (Doc. 4) shall also be referred to U.S. Magistrate Judge Williams for further consideration.  The Court notes that the Federal Rules permit class actions to be maintained only if the class representative (in this case the *pro se* Mr. Lester) "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action."  *Lee v. Gardinez*, No. 11-cv-570-GPM, 2012 WL 143612, at *1 n.1 (S.D. Ill., Jan. 18, 2012) (quoting *Craig v. Cohn*, 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (internal citations and quotation marks omitted)).  *See also Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action).

**Disposition**

        **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.   Defendants **WEESEL (WESSEL), MAYS,** and **JANE/JOHN DOE #1** are **DISMISSED** from this action without prejudice.

        The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **WALTON** and **RUNGY**; the Clerk shall issue the completed summons.  The United States Marshal **SHALL** serve Defendants **WALTON** and **RUNGY** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1]  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

        In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

        Service shall not be made on the Unknown (John/Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is

---

[1]   Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

**ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel.  Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into

a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 16, 2016**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court